UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

MATTHEW MCKINNEY,                                    CIVIL NO. 02-4269 (ADM/JSM)
through his parent and legal
guardian, Tammy Emery

      Plaintiff,

v.                                                                          REPORT AND
                                                                            RECOMMENDATION

SCHOOL BOARD OF
INDEPENDANT SCHOOL
DISTRICT NO. 11,

      Defendant.

      JANIE S. MAYERON, U.S. Magistrate Judge

      This matter came on for hearing before the undersigned United States Magistrate

Judge on defendant's Motion for Judgment on the Administrative Record in Part and for

Partial Summary Judgment [Docket No. 38].  Sonja D. Kerr, Esq. appeared on behalf of

plaintiff; Amy E. Mace, Esq. appeared on behalf of defendant.

      This matter has been referred to the undersigned Magistrate Judge for a Report

and Recommendation by the District Court pursuant to 28 U.S.C. §636(b)(1)(B) and

Local Rule 72.1(c).   For the reasons discussed below, it is recommended that

defendant's Motion for Judgment on the Administrative Record in Part be **GRANTED**,

and that defendant's Motion for Partial Summary Judgment be **GRANTED** in part and

**DENIED** in part.

## I.   FACTUAL BACKGROUND

### A.   <u>Procedural Background</u>

Plaintiff, Matthew McKinney's ("McKinney"), action against School Board of ISD #11 Anoka-Hennepin ("School District") arises out of his appeal from three decisions of Hearing Review Officers ("HRO") in Minnesota Department of Children, Families, and Learning ("MDCFL") Case Nos. 390, 424, and 487.   McKinney contests the findings of these three administrative hearings relating to his access to a free appropriate public education ("FAPE"), as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 <u>et</u> <u>seq.</u>

In MDCFL Case No. 390, an Independent Hearing Officer ("IHO"), presided over a due process hearing requested by McKinney regarding an assistive technology assessment, modifications in the regular classroom, and parental participation in IEP meetings.   The hearing was held on August 25, 28, 29 and September 1, 2000 and the IHO found for the District.   McKinney appealed the decision reached in MDCFL Case No. 390 to the HRO who upheld the IHO's decision on December 15, 2000.   In this regard, the HRO found that (1) the School District did not inhibit the ability of McKinney's mother to participate in the Individualized Education Plan ("IEP") process; (2) although the School District had delayed in providing McKinney with an assistive technology evaluation, he was not entitled to relief;  (3) that the School District was not required to ensure that plaintiff received Extended School Year ("ESY") services while he was in Las Vegas, Nevada; and (4) McKinney had received the provision of accommodations and modifications in regular education classrooms, except for the Picture Exchange Communication System.   <u>See</u> Affidavit of Stacey L. Wilson ("Wilson

Aff."), Ex. 2, at pp. 5-9; see also First Amended Complaint, at p. 4, ¶ 9.

In March 2001, McKinney requested a second due process hearing, MDCFL Case No. 424, which focused on the training of the paraprofessionals assigned to McKinney. The hearing was conducted on June 11-12, 2001, and the IHO again found for the District. The HRO upheld the IHO's decision on September 18, 2001. With respect to MDCFL Case No. 424, McKinney challenged the School District's decision to replace an experienced paraprofessional who had allegedly received significant training with regards to DynaMyte, McKinney's augmentative communication device, with two paraprofessionals who allegedly lacked such training. See First Amended Complaint, at p. 5, ¶ 11. Among the various findings and conclusions of law by the HRO which McKinney claims were erroneous, McKinney contested the HRO's findings that the District was not required to develop a comprehensive system of personnel development under the IDEA, and that the paraprofessionals were properly trained. Id. at pp. 5-6, ¶ 11.

With respect to MDCFL Case No. 487, the matter presently before this Court, the single issue presented to the IHO and HRO was whether the proposed IEP for the year 2002 should be approved and implemented for McKinney. See First Amended Complaint, at pp. 6-7, ¶ 15.

The School District has brought before the Court a Motion for Judgment on the Administrative Record in Part and for Partial Summary Judgment. The School District has represented that its "Motion only involves MDCFL Case No. 487."[1] See

---

[1]     McKinney moved for judgment on the record MDCFL Case No. 487, a part of his Memorandum in Support of Judgment in Favor of Plaintiff on Expanded Record or to Set Matter for Trial to Hear Additional Evidence [Docket No. 90]. In addition, he

Memorandum in Support of Defendant's Mouton for Judgment on the Record in Part/Partial Summary Judgment (Def.'s Mem.") at p. 1.

In his First Amended Complaint, as it related to MDCFL Case No. 487, McKinney alleged a number of grounds for reversing the HRO's approval of the IEP for 2002:

- The IEP was not developed in a legally constituted IEP meeting as required by the IDEA, 34 C.F.R. §§ 300.340-300.350.  <u>See</u> First Amended Complaint, p. 7, ¶ 17.

- The defendants violated the prior written notice requirements of 34 C.F.R. § 300.503 with regard to the May 2002 IEP.  <u>Id.</u>

- The May 2002 IEP lacked current levels of performance, 34 C.F.R. § 300.347.  <u>Id.</u> at p. 8, ¶ 17.

- The Extended School Year ("ESY") services for the summer of 2002 were proposed on April 25, 2002, which was too late for McKinney to utilize the administrative hearing process.  <u>Id</u>

McKinney's Amended Complaint also alleges that the findings of the HRO were arbitrary and capricious.  <u>Id.</u> at p. 8, ¶ 17.   There is no mention in the Amended Complaints as to why McKinney alleged that the findings were arbitrary and capricious, except to the extent it asserts that the HRO wrongfully excluded evidence including that

---

submitted additional arguments on MDCFL Case No. 487 in his February 1, 2005 Memorandum in Response to Defendant's Motion for Summary Judgment/Judgment on the Administrative Record [Docket No. 92].  The School District has objected to these submissions as they relate to MDCFL Case No. 487 as being untimely under the Court's scheduling order.  On October 15, 2003, this Court denied the School District's request to extend the dispositive motions deadline as to MDCFL Case No. 487, which had been set at October 1, 2003.  <u>See</u> October 15, 2003 Order [Docket No. 49]; <u>see also</u> January 29, 2003 Order [Docket No. 7].  On November 16, 2004, Magistrate Judge Arthur J. Boylan issued an order allowing the parties to file additional dispositive motions as to MDCFL Case Nos. 390 and 424, along with supporting written submissions.  <u>See</u> November 16, 2004 Order [Docket No. 78].  No mention was made in Magistrate Judge Boylan's Order allowing McKinney to pursue a dispositive motion for MDCFL Case No. 487.  As such, this Court will not consider McKinney's dispositive motion as it related to MDCFL Case No. 487 or any of the parties' submissions [Docket Nos. 80, 81, 91, 92, 93, 94, 96, 97, 98], on this matter.

of McKinney's proposed expert, Donita O'Donnell, an expert witness.  Id.  Further, none of the grounds articulated by McKinney in his Amended Complaint, as to MDCFL Case No. 487, addressed the issues of whether a school district is required to develop a comprehensive system of personnel development under the IDEA or the training of district staff.

### B.    Hearing Before the Independent Hearing Officer

On September 3, 2003, a due process hearing was held before IHO, Fredrick C. Brown, based on the School District's request for a due process hearing, in order to implement an IEP for McKinney proposed by the School District on May 3, 2002.  Prior to the due process hearing, attorneys representing the parties conducted a prehearing conference with the IHO.  See Affidavit of Amy E. Mace in Support of Defendant's Motion for Judgment on the Record in Part/Partial Summary Judgment ("Mace Aff."), Ex. D (Transcript from Prehearing Conference).  During the prehearing conference, McKinney's counsel represented that she was withdrawing the cross-claims that were initially brought by McKinney in conjunction with the School District's request for a due process hearing to implement the proposed IEP.  Id. at p. 7.

As such, the specific issue before the IHO was limited to the following:

> Whether the IEP proposed by the District (including educational goals and related services) dated May 3, 2002, is reasonably calculated to enable the Student to receive meaningful educational benefits in the lease restrictive environment and is designed to provide the Student with a free and appropriate public education (FAPE).

See October 9, 2002, IHO's Findings of Fact Conclusions, and Decision in MDCFL Case No. 487 ("IHO Decision") at p. 2.

McKinney's mother, Tammy Emery ("Emery"), did not attend the due process

hearing, but did send a letter that was read into the record by her counsel.  See Plaintiff's Memorandum of in Response to Defendant's Motion for Judgment on the Record in Part/Partial Summary Judgment ("Pl.'s Mem.") at p. 10.  The letter provided in relevant part:

> I am not participating in this due process hearing brought forward by 11 for the following reasons: I am currently experiencing health-related issues brought on by the constant stress of dealing with the special education administration in this district for the last four years.  I have been to countless IEP meetings, facilitated or otherwise, mediation, conciliation.  I have dealt with an endless flow of paperwork between my self, the district and the attorneys this past spring. I paid my attorney, Sonja Kerr, to represent my son with the hope that she would be able to educate staff and administration in the present levels of performance.  We offered handouts on present levels of performance according to the IDEA.  I feel I have done my best to help the professional work with my son to create a functioning IEP.  The current IEP is inappropriate.  At this time, I feel that the due process in this district is futile.

See Affidavit of Sonja D. Kerr in Support of Plaintiff's Memorandum in Response to Defendant's Motion for Judgment on the Record in Part/Partial Summary Judgment ("Kerr Aff."), Ex. Q; see also Mace Aff., Ex. C at pp. 8-9.

The following facts were developed at due process hearing before the IHO:

In October of 2001, Stephanie Brahms ("Brahms"), who is licensed in Mild to Moderately Mentally Impaired and was part of McKinney's IEP team, attempted to schedule an IEP meeting to develop a new annual IEP for McKinney.  See IHO Decision at p. 3, ¶¶ 11-12.  An IEP meeting was scheduled for November 15, 2001, but was subsequently rescheduled to November 19, 2001, as the School District wanted legal representation present when it learned that Emery's counsel would be attending the meeting.  Id.  at p. 3, ¶ 13-14; see also Mace Aff., Ex. P (Due Process Transcript) at

p. 90.   Emery, McKinney's mother, was provided with notice of the meeting.   IHO Decision at p. 3, ¶ 14; see also Mace Aff., Ex. P at p. 90 (Due Process Transcript).   The November 19, 2001, IEP team meeting was attended by several individuals, including Emery and Jan Grieser, her advocate.   IHO Decision at p. 3, ¶ 15; see also Mace Aff., Ex. P (Due Process Transcript) at pp. 91, 306.   During the meeting, the IEP team discussed portions of the IEP that covered reading, math and developmental/adapted physical education with regard to present levels of performance, goals, and objectives. IHO Decision at p. 4, ¶ 16; see also Mace Aff., Ex. P (Due Process Transcript) at pp. 92, 306-07.   The IEP team also put forward several plans in order to deal with McKinney's target behaviors.   See Mace Aff., Ex. P (Due Process Transcript) at pp. 92, 307-08. The parties were not able to finish the entire IEP during the three-hour meeting and decided to schedule another meeting.   See IHO Decision at p. 3, ¶ 18; see also Mace Aff., Ex. P at p. 91 (Due Process Transcript).   Brahms sent Emery a notice of a team meeting for December 6, 2001.   See IHO Decision at p. 3, ¶ 18

During the December 6, 2001 meeting, the parties, including Emery and her advocate, discussed McKinney's present level of performance, the goals and objectives in the area of fine motor skills, target behaviors, and McKinney's positive behavior plan. IHO Decision at p. 4, ¶ 19; see also Mace Aff., Ex. P (Due Process Transcript) at p. 92. Further, the IEP team discussed the level of performance and goals and objectives in the area of communications.   See IHO Decision at p. 4, ¶ 19.   Emery made several suggestions and requests including providing chewing gum after lunch, working on social greetings with peers and Gateway training for Emery.   Id. at p. 4, ¶ 20.   The proposed IEP included Emery's suggestion of working on social greetings with peers.

Id.  The meeting also discussed extended school year ("ESY") services and Emery requested that she wanted her son to attend community education for ESY.  Id. at p. 4, ¶ 21.  Emery was an active participant at the November 19, and December 6, 2001 IEP meetings and was able at all times to consult with her advocate.  Id. at p. 5, ¶ 22.

The staff members of the IEP team believed that that Emery would approve the proposed IEP because she did not object to the goals and objectives discussed during the previous meetings.  See IHO Decision at p. 5, ¶ 23; see also Kerr Aff., Ex. R (Due Process Transcript).  While notes were taken by staff regarding what changes Emery wanted to have made to the IEP in terms of the goals, objectives and services, these were not written into the IEP during the meeting, nor were the notes made by staff shown to Emery.  See Mace Aff., Ex. C (Due Process Transcript) at p. 189; see also Kerr Aff., Ex. R (Due Process Transcript) at p. 189.  Changes mentioned at the meeting were written down on a copy of the IEP, and then after the meeting the changes would be made.  Id.

On December 20, 2001, Brahms sent Emery the proposed IEP that was based on the previous meetings, however, Emery rejected the IEP proposal.  See IHO Decision at p. 5, ¶¶ 24-25.  Emery was subsequently contacted numerous times by the IEP team, notifying her that they wanted to meet with her in conciliation or mediation to work on the proposed IEP.  Id. at p. 5, ¶¶ 26-29; see also Mace Aff., Ex. P (Due Process Transcript) at p. 314.

On March 4, 2002, Brahms sent a letter to Emery notifying her that the IEP meeting would be held on March 6, 2002.  See IHO Decision at p. 5, ¶ 30.  Emery responded on March 5, 2002 that she would not attend the hearing, as she believed it

would be futile.  Id. at p. 6, ¶ 31; see also Mace Aff., Ex. P (Due Process Transcript) at pp. 315-16.  At least one member of the IEP testified that staff had been very anxious to come to an agreement with Emery and if she had a concern in an area they would to explain it.  See Mace Aff., Ex. P (Due Process Transcript) at p. 315.

On March 12, 2002, Emery asked for a meeting to discuss McKinney's behavior plan and a meeting was held on March 20, 2002, which included the attendance of Emery, her advocate, and counsel.  See IHO Decision at p. 6, ¶¶ 32-33.  At the meeting, Emery raised concerns that the present levels of performance sections of the IEP did not include sufficient information, the goals listed in the IEP were not measurable, and that McKinney should not be pulled out of the mainstream so much. See IHO Decision at p. 6, ¶¶ 33-35; see also Mace Aff., Ex. P (Due Process Transcript) at pp. 106-07, 317-18, 321.  During the meeting, the School District offered Emery mediation or conciliation, to which Emery responded that she would agree to a facilitated IEP meeting.  See IHO Decision at p. 6, ¶ 36; see also Mace Aff., Ex. P (Due Process Transcript) at pp. 107, 318.  The School District agreed and Emery was able to choose the facilitator.  See IHO Decision at p. 6, ¶ 36; see also Mace Aff., Ex. P (Due Process Transcript) at pp. 318, 328.  Emery was provided with a draft of the goals and objectives for use at the facilitated meeting and the meeting occurred on April 11, 2002. See IHO Decision at p. 6, ¶¶ 37-38; see also Mace Aff., Exs. C (Due Process Transcript) at p. 135, P (Due Process Transcript) at p. 323.

During the April 11, 2002 facilitated IEP meeting, which lasted from approximately 9:00 a.m. to about 3:30 p.m., the IEP team, Emery and her advocate developed the math goal that was included in the May 3, 2002 proposed IEP, the

present levels of performance, and worked on the math objective, which was not finished.  See IHO Decision at at p. 7, ¶ 39, see also Mace Aff., Ex. C (Due Process Transcript) at pp. 135-38, 479.  The IEP was typed on the computer during the meeting, and Emery and her advocate watched as the objectives and goals regarding math were typed into the IEP.  See Mace Aff., Ex. C (Due Process Transcript) at pp. 138, 477.  In addition, McKinney's present level on current objectives was discussed.  Id. Emery appeared to be happy with what was being written into the IEP.  Id. at 478.  The parties planned to meet in a week to finish the math objective and the rest of the IEP.[2]  See IHO Decision at p. 7, ¶ 39; see also Mace Aff., Ex. C (Due Process Transcript) at p. 138.

On April 22, 2002, the second facilitated meeting was held.  See Mace Aff., Ex. C (Due Process Transcript) at p. 138.[3]  The meeting lasted from lasted from approximately 9:00 a.m. to about 3:30 p.m.  Id. at p. 139.  During the meeting, the parties became deadlocked on the issue on how McKinney's present levels of performance in math should be written.  Id. at p. 479.  No changes had been made to the present level of performance between the April 11 and April 22 facilitated meetings.  Id. at p. 480.  In addition, the IEP team and Emery could not agree on the period of time that the IEP should cover.  See IHO Decision at p. 7, ¶ 41.  In particular, Emery wanted an interim

---

[2]     During the meeting, McKinney's counsel asked that Christie Peterson ("Peterson"), Assistant Special Educator Director for School District, be excluded from the IEP meeting, which was agreed to by the School District.  See Mace Aff., Exs. C (Due Process Transcript) at p. 136, P (Due Process Transcript) at p. 329.  In addition, the parties' respective attorneys went into separate rooms from the IEP team.  Id., Ex. C (Due Process Transcript) at p. 136.

IEP, which the School District did not agree to do.  See Mace Aff., Ex. C (Due Process Transcript) at p. 139.  The IEP team then agreed to develop an ESY program despite not being able to come up with an IEP.  See IHO Decision at p. 7, ¶ 42; see also Mace Aff., Ex. C (Due Process Transcript) at pp. 139-140.  During these discussions, Emery requested that McKinney attend community education classes.  See IHO Decision at p. 7, ¶ 42; see also Mace Aff., Ex. C (Due Process Transcript) at p. 140.  The IEP team reviewed the community education brochure and selected classes that would be appropriate for McKinney, reviewed the stay-put IEP, and selected goals and objectives for McKinney to work on during the ESY services.  Id.

A third facilitated meeting was scheduled for April 29, 2002, however, Emery refused to participate in that meeting.  IHO Decision at p. 7, ¶ 43; see also Mace Aff., Ex. P (Due Process Transcript) at pp. 329-30.

After the April 22, 2002 meeting, the School District sent Emery a notice of a significant change to the stay-put IEP, which reflected the IEP team's discussion at the April 22, 2002 meeting.  See IHO Decision at p. 7, ¶ 43.  Emery subsequently sent a letter stating that she did not agree with the ESY plan set forth in the draft IEP that had been discussed at the second facilitated IEP meeting and requested mediation regarding ESY services.  Id. at p. 7, ¶ 44; see also Mace Aff., Ex. P (Due Process Transcript) at pp. 333-34.  Instead of the mediation, Brahms sent Emery a notice for a team meeting to be held on May 13, 2002, at which time Emery could meet the ESY staff in a question and answer session regarding ESY services.  See IHO Decision at p.

---

[3]     The second facilitated IEP meeting had been scheduled for April 15, 2002, however, Emery was unable to attend on that date, so the date was changed to April 22, 2002.  See Mace Aff., Ex. C (Due Process Transcript) at p. 138.

7, ¶ 45.  Emery did not attend this meeting.  Id.

The School District worked to complete the arrangement for the IEP program and sent Emery a letter summarizing the plan.  Emery responded by letter stating that her son would be attending ESY, but that she did not agree to the ESY portion of the draft IEP she received.  See  IHO Decision at p. 8, ¶ 47.  As a result, the School District placed McKinney on the ESY from the last year plan as the stay-put plan.  Id.

The proposed IEP at issue in this case was sent to Emery on May 3, 2002 and was subsequently rejected by Emery on May 4, 2002.  IHO Decision at p. 8, ¶¶ 48-49. The proposed IEP included seven annual goals with objectives addressing the following skill areas: math, reading, communication, social/emotional behavior skills, gross motor skills and fine motor skills.  Id. at p. 8, ¶ 50; see also Mace Aff., Ex. B (May 3, 2000 Proposed IEP).  On May 21, 2002, the School District sent Emery a letter offering mediation, which she rejected.  Id. at p. 8, ¶ 49.  Included with the IEP was a Notice of Proposed Education Services Form, which is suppose to give the parent notice as to the proposed changes and provides the parent a manner to agree or disagree with the proposed changes.  See Kerr Aff., Ex. T (Due Process Transcript, including Ex. 80).

During the hearing before the IHO, testimony was received from the following individuals:

- Christie Peterson—Assistant Special Educator Director for School District #11.  See IHO Decision at p. 5, ¶ 26.  Peterson was the administrator on McKinney's case and participated IEP team meetings.  Id. at pp. 5, 15, ¶¶ 26, 95.  Peterson testified at the hearing that the present levels of educational performance, goals, and the objectives in the proposed IEP all met her expectations based on her experience, in writing IEP's and based on her experiences as a consultant and special education director.  Id. at p. 15, ¶ 96. According to Peterson, expectations for present levels of performance should include "a discussion of a student's previous progress in each area, should identify his current level of performance, and should identify special education

needs in each area." Id. at p. 15, ¶ 97.

- Sarah Brezinka ("Brezinka")—Worked on the area of math with McKinney. See IHO Decision at p. 8, ¶ 53.  Brezinka is licensed in Mild to Moderate Mentally Impaired and had ten years of experience as a special education teacher.  Id.  She testified, based in her expertise, that the objectives included in the IEP, as to the math section, were appropriate for McKinney.  Id. at p. 9, ¶ 55.

- Brahms testified regarding the reading portion of the IEP.  See IHO Decision at pp. 9-10, ¶¶ 56-60.  Brahms was McKinney's case manager and reading teacher for the 2001-02 school year.  Id. at p. 9, ¶ 56.  Brahms testified as to McKinney's current level performance in reading.  Id. at p. 9, ¶ 57.  McKinney's counsel also elicited testimony from Brahms as to parental involvement in the development of IEPs.  See Kerr Aff., Ex. R (Due Process Transcript).

- Karen Gibson ("Gibson")—Licensed Speech Pathologist.  Gibson provided McKinney with speech services during the 2001-02 school year and was a member of the IEP team.  See IHO Decision at p. 10, ¶ 61.  Gibson maintained data on how McKinney was performing on his communication objective in his stay-put IEP and provided this information to Emery on a weekly basis.  Id. at p. 10, ¶ 62.  Gibson testified that the proposed IEP communication goals and objectives contained in the proposed IEP were appropriate for McKinney and that his progress on speech objectives over the 2001-02 school years is reflected in the proposed IEP.  Id. at p. 10, ¶¶ 63-64.

- Cindy Zidar ("Zidar")—Has worked with McKinney in the area of gross motor skills since 1998.  See IHO Decision at p. 11, ¶ 69.  Zidar was licensed in the areas of adaptive physical education and has 16 years of experience as a Developmental Adapted Physical Education.  Id.  Zidar prepared the progress report for gross motor skills and she testified at the hearing that the level of performance section in the proposed IEP accurately reflected McKinney's abilities.  Id. at p. 11, ¶¶ 70-71.

- Jennifer Throsland ("Throsland")—Licensed Occupational Therapist.  Worked with McKinney in the area of fine motor skills from January 28, 2002 to the end of the 2001-02 school year.  See IHO Decision at p. 12, ¶ 74.  Throsland testified that the goals and objectives in the proposed IEP as to fine motor skills were appropriate for McKinney.  Id. at p. 12, ¶ 76.

The IHO found that the team members provided testimony, with factual support, that the present levels of performance sections in the proposed IEP accurately reflected McKinney's level of performance at the time of the proposal.  See IHO Decision at p. 16,

¶ 100.  In this regard, the May 3, 2002 proposed IEP sets forth the present level of educational performance in the areas of math, reading and written language, communication, behavior skills, fine motor skills, and gross motor skills.  See Mace Aff., Ex. B (May 3, 2000 Proposed IEP) at pp. 3-12.  In each section of the IEP, current objectives are listed and the current level of McKinney is provided in percentage points to show McKinney's accuracy regarding the various objectives.  Id.  For example, in the math section, one of the objectives included that McKinney be able to "[a]dd and subtract two digit numbers independently using touch point with 80% accuracy.  [Status at the end of 2000-2001: 90% with staff assistance]."  Id. at p. 3 (emphasis in original).  Further, McKinney's teachers provided their narrative observations regarding his current level of performance for each of the aforementioned sections.  Id. at pp. 3-12.  The IEP also contained a checklist where McKinney's skills in the areas of reading, writing and math skills were rated from mere awareness to application, and contained results from other tests and assessments performed.  Id. at pp. 5, 19-28.

The IHO also found that 34 C.F.R. § 300.503(a) requires school districts to provide parents with written notice when it proposes to change the identification, evaluation or educational placement or provision of FAPE to a child.  See IHO Decision, at p. 18, ¶ 5.  The IHO found that the School District provided Emery with prior written notice regarding all aspects of the proposed IEP, and while the notice may not have specifically addressed the requirements of 34 C.F.R. § 300.503(a) in the most organized manner, the School District demonstrated by the preponderance of the evidence that Emery received proper prior written notice and did have opportunity to and did reject the IEP.  Id. at p. 18, ¶ 6.

Further, the IHO found that the School District provided credible evidence that it acted in good faith in involving Emery as much as feasible in the development of McKinney's IEP.  IHO Decision at p. 18, ¶¶ 7-10.  In addition, the IHO found that IEP was developed in conformity with 34 C.F.R. § 300.347.  Id. at p. 19, ¶ 11.  The IHO noted that Emery did not attend the hearing and provided little to no evidence that the services the School District proposed were not reasonably calculated to enable McKinney to receive a meaningful education in the least restrictive environment.  Id.  He also found that School District had demonstrated by a preponderance of the evidence that the proposed IEP was reasonably calculated to enable her son to receive a meaningful education in the least restrictive environment, and thereby authorized the School District to implement the May 3, 2002 IEP over Emery's objections.  Id. at p. 19, ¶¶ 12-14.

C.     **Appeal Before the Hearing Review Officer**

On November 8, 2002, McKinney's counsel filed a Notice of Appeal of the IHO's decision with the Minnesota Department of Children, Families and Learning.  See Mace Aff., A.  The following parts of the of the IHO's decision were appealed:

1.     The HRO's [sic][4] Decision that the proposed IEP of May 2002 is appropriate (Decision page 19, Par. 1) and all findings of fact and conclusions of law in support thereof.

2.     The HRO's [sic] Decision that the proposed IEP is authorized and to be implemented (Decision, pg. 20, Par. 2) and all findings of fact and conclusions of law in support thereof.

3.     The HRO's [sic] Decision that Student's IEP team is

---

[4]     This Court assumes that McKinney's counsel was referring to the IHO's decision as opposed to the HRO's decision.

directed to develop a new annual IEP for the Student by May 3, 2002 (Decision pg. 20, Par. 3) and all findings of fact and conclusions of law in support thereof.

Id.

According to the HRO, the issues on appeal were: (1) whether the School District had proposed an appropriate IEP for the Student; (2) whether the School District should implement the proposed IEP for the Student; and (3) whether the School District should develop a new annual IEP for the Student by May 3, 2002. See December 13, 2002 HRO's Findings of Fact, Conclusions and Decision in MDCFL Case No. 487-2 ("HRO Decision") at p. 3.

The HRO made no separate findings of fact.  Instead, the HRO found that the IHO's Findings of Fact were supported by a preponderance of the evidence and incorporated those findings in his decision.  See HRO Decision at p. 3.  With regards to the procedural requirements, the HRO found that the School District gave McKinney's parent the opportunity to participate in the IEP process.  Id. at p. 7.  The HRO noted that the School District began attempts to schedule an IEP meeting with Emery in October of 2001, in order to comply with the requirement to review and revise a student's IEP annually.  Id. at p. 6.  Emery had the opportunity to participate at the November 19 and December 6, 2001 IEP meetings and had the opportunity to consult her advocate who was present at the meetings.  Id.  In addition, the School District sent Emery a proposed IEP on December 20, 2001, based on the discussions at the previous IEP meetings, which Emery rejected.  Id. at p. 7.

According to the HRO, the School District then made numerous attempts to contact Emery from January to March 2002, in order to arrange a meeting where

Emery's concerns could be addressed.  HRO Decision at p. 7.  On March 20, 2002, Emery agreed to meet with the IEP team with a facilitator of her choosing.  Id.  Two facilitated meetings were held, and the IEP team, including Emery, spent approximately 18 hours drafting an IEP.  Id.  The School District was willing to engage in a third facilitated meeting to finish drafting the IEP, but Emery refused to participate.  Id.  The School District then proposed an IEP for McKinney on May 3, 2002, which was rejected.  Id.  Further, Emery rejected going to mediation or conciliation regarding the proposed IEP.  Id.

The HRO stated in his decision that Emery alleged three procedural errors in the development of the proposed IEP.  See HRO Decision at p. 7.  First, Emery alleged that, except for the math portion and portions of the ESY program, the proposed IEP was not created in a meeting with Emery.  Id.  Emery also asserted that the IEP must be written in a final form during an IEP meeting.  Id.  The HRO found that the test was not whether Emery was present, but whether Emery was provided the opportunity to participate in the development of the IEP.  Id. at p. 8.  The HRO also held that there is no requirement that a proposed IEP be written during an IEP meeting.  Id.  Further, Emery's claims that the IEP process excludes parents even if they are present because the silence is seen as acquiescence, was rejected by the HRO, given that the record demonstrated that Emery, her attorney and advocate participated in the IEP process, that her input was taken into consideration and even incorporated into the IEP.  Id.

Second, the HRO rejected McKinney's contention that the IEP was inadmissible during the initial hearing on the grounds that it was developed as a result of a facilitated IEP meeting.  See HRO Decision at pp. 8-9.  The HRO noted that Emery did not raise

this objection to IHO.  Id. at p. 9.  The HRO concluded that the facilitated meetings, where portions of the proposed IEP were drafted, were not mediations but were noticed as IEP meetings.  Id. at p. 9.

Third, Emery claimed that the IEP was inappropriate due to a lack of prior written notice.  Id. at p. 9.  The HRO found that the notice did not comply with the procedural requirements of 34 C.F.R. § 300.503(b), however, the HRO concluded that these errors were de minimus and did not result in the loss of educational opportunity or infringe of Emery's ability to participate in the IEP process.  Id. at pp. 9-13.

Fourth, Emery argued to the HRO that the substantive requirements of the IDEA were not met as to the proposed IEP, because of deficiencies in certain present levels of performance and goals provided.  Id. at p. 13.  In particular, Emery argued that present level of performance and goals provided in the areas of reading and communication were lacking because the IEP failed to require yearly standardized assessments to measure the progress of McKinney.  Id.  The HRO rejected Emery's argument, as the IDEA only requires re-evaluation once every three years.  Id. (citing 20 U.S.C. § 1414(a)(2)(A)).

In addition, the HRO found that the present levels of performance for reading contained in the proposed IEP was adequate and noted that it contained more information than that contained in the stay-put IEP, to which Emery had agreed.  See HRO Decision at p. 14.  The HRO also rejected Emery's contention that Goal 2 of the reading section in the proposed IEP was not reasonably calculated to result in educational benefit.  Id.  Goal 2 provided, "Matthew will increase the number of sight words he can read at least 80% accuracy from the current total to a total of 300 and he

will increase the accuracy of answering comprehension questions from the related stories from 61% to 90%." <u>See</u> Mace Aff., Ex. B (May 3, 2000 Proposed IEP) at p. 4. Emery stated that the reading goal in the IEP of being able to read 80 new words was well below McKinney's abilities as Brahms testified that McKinney was able to learn two words a day. <u>See</u> HRO Decision at p. 14. The HRO found that the 80-word increase represented progress and if McKinney met the reading goal before May 2003, the IEP team could meet to revise the goal. <u>Id.</u>

Lastly, the HRO concluded that the present levels of performance for the communication portion of the proposed IEP was supported by objective data as Gibson, the speech pathologist, had collected data on how McKinney was performing on his communication objective and provided an update to Emery on a weekly basis. HRO Decision at p. 15. Further, Gibson prepared three progress reports during the 2001-02 school year in the area of communication. <u>Id.</u>

In summation, the HRO affirmed the decision of IHO to authorize and direct the School District to implement the proposed IEP. <u>Id.</u> In coming to this decision, the HRO noted that the IEP met both the procedural and substantive requirements of the IDEA. <u>Id.</u>

## II.   DISCUSSION[5]

### A.   Motion for Judgment on the Administrative Record as to MDCFL Case No. 487

#### 1.   Standard of Review

The IDEA allows aggrieved individuals to seek review of an administrative hearing body's decision by bringing an action in federal district court. See 20 U.S.C. § 1415(i)(2)(A).  Judges are not trained educators and therefore, judicial review under the IDEA is limited.  E.S. v. Independent Sch. Dist., No. 196, 135 F.3d 566, 569 (8th Cir. 1998).  "A Motion for Judgment on the Record, in the context of the IDEA, is a request that the Court enter a final judgment in what is essentially 'a bench trial on a stipulated record.'"  Slama v. Independent Sch. Dist. No. 2580, 259 F. Supp.2d 880, 882 (D. Minn. 2003) (quoting Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1472 (9th Cir. 1993), cert. denied, 513 U.S. 825 (1994)).  It is the reviewing court's duty under the IDEA to determine based upon the "preponderance of the evidence," whether a school district has complied with the Act.  See Slama, 259 F. Supp.2d at 882 (citing S.D., 88 F.3d at 561) (citations omitted); see also CJN v. Minneapolis Public Schools, 323 F.3d 630, 633 (8th Cir, 2003) ("Under the IDEA, a district court must review the state administrative record, hear additional evidence if requested, and, 'basing its decision on the

---

[5]       This Court finds that McKinney's argument that this Court must deny the School District's dispositive motion, while discovery remains pending, to be moot.  McKinney had filed a motion to compel which was to be heard by this Court regarding whether or not the School District had to produce discovery related to comprehensive systems of personnel development [Docket No. 31].  On December 1, 2003, the Court issued an Order granting in part and denying in part McKinney's Motion to Compel [Docket No. 56].  The Court's discovery Order was affirmed on January 30, 2004 by Chief Judge James M. Rosenbaum [Docket No. 74].  Any residual discovery issues have also been rendered moot by this Court's Order as to plaintiff's Motion to Hear Additional Evidence issued contemporaneously with this Report and Recommendation.

preponderance of the evidence, shall grant such relief as the court determines is appropriate.'") (quoting 20 U.S.C. § 1415(i)(2)(B)).   A review of an agency's action may be conducted on the administrative record even if there are disputed issues of material fact.  See Independent Sch. Dist. No. 283 v. S.D., 88 F.3d 556, 561 (8th Cir. 1996).

The United States Supreme Court has "emphasized that the district court must afford the administrative proceedings 'due weight.'"   Blackmon v. Springfield R-XII School School District, 198 F.3d 648, 655 (8th Cir. 1999) (citing Hendrick Hudson Dist. Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982)).   "The district court's standard of review is less deferential than that applied under the substantial evidence test that courts ordinarily apply in federal administrative law cases, however, a district court must give consideration 'to the fact that the state hearing panel has had the opportunity to observe the demeanor of the witnesses.'"   Id. at 654-55 (quoting Fort Zumwalt Sch. Dist. v. Clynes, 119 F.3d 607, 610 (8th Cir. 1997), cert. denied, 523 U.S. 1137 (1998)). Where an IEP is being challenged, a court may not substitute its "'notions of sound educational policy for those of the school authorities.'"  Id. (quoting Petersen v. Hastings Public Schools, 31 F.3d 705, 707 (8th Cir. 1994), quoting Rowley, 458 U.S. at 206); see also Slama, 259 F. Supp.2d at 882 (citations omitted).  The reason for this deference is because courts do not have the specialized knowledge and experience required to resolve difficult questing regarding policy.   See Blackmon, 198 F.3d at 655 (citing Rowley, 458 U.S. at 208) (citation omitted).

The essential issue before the IHO in this case, and the subject of the review of the HRO, was whether the May 2, 2002 IEP was  reasonably calculated to enable the McKinney to receive meaningful educational benefits in the least restrictive environment

and was designed to provide him with FAPE.

The United States Supreme Court has found that following inquiry is to be used in determining whether FAPE has been met:

> First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

Rowley, 458 U.S. at 206-07.  As such, this Court must determine whether the School District has complied with the procedural requirements set forth by the IDEA and its accompanying regulations in developing the May 2, 2002 proposed IEP and whether the IEP meets the substantive requirements of the Act.

### 2.    Procedural Violations

McKinney alleged in his First Amended Complaint that the IEP was not developed in a legally constituted IEP meeting as required by the IDEA, 34 C.F.R. §§ 300.340-300.350.  See First Amended Complaint, p. 7, ¶ 17.   In the response to the School District's motion, McKinney focuses on the argument that his parent was denied full and fair participation in the IEP process.  See Def.'s Mem. at p. 24.  Specifically, McKinney alleges that his mother was mistreated during the IEP meeting, her private providers were ignored, she was denied to access to notes that were generated during an IEP meeting that were used to generate an IEP, she was limited in the process of an evaluation, her opinions were denigrated by a hearing officer, her expert witness was excluded, the IEP was drafted outside of the IEP process, she was denied proper written notice, and that the School District delayed informing McKinney of his ESY

plan.[6]  Id. at pp. 25-33.  In sum, McKinney alleges that the environment created by the School District and the review process hampered his mother's involvement in developing his IEP.  Id. at pp. 24-25.

The School District alleges that the McKinney's arguments that it violated the procedural requirements of the IDEA are not properly before the Court, as he has not exhausted his administrative remedies on these claims.  See Def.'s Mem. at p. 10.

The IDEA allows a party dissatisfied with the result of a due process hearing to bring suit in federal court.  See 20 U.S.C. § 1415(i)(2).  However, before an aggrieved party can bring suit under the IDEA, the party must have exhausted the administrative remedies provided under §§ 1415(f) and (g).  The Eighth Circuit has outlined the procedural process by which a parent and student may pursue their rights under the IDEA.

> "Under the IDEA, parents are entitled to notice of proposed changes in their child's educational program and, where disagreements arise, to an 'impartial due process hearing.' [20 U.S.C. § 1415(b)(2).]  Once the available avenues of administrative review have been exhausted, aggrieved parties to the dispute may file a civil action in state or federal court.  Id. § 1415(e)(2)."

Light v. Parkway C-2 School School District, 41 F.3d 1223, 1227 (8th Cir. 1994), cert. denied, 515 U.S. 1132 (1995).

---

[6]   This Court cannot find any place in the First Amended Complaint where McKinney alleged that the HRO in MDCFL Case No. 487 erred in not finding that parental involvement was lacking in the IEP process, let alone claims that the HRO did not take into account that his mother was mistreated during the IEP meeting, that her private providers were ignored, that she was denied to access to notes that were generated during an IEP to develop the IEP, that she was limited in the process of an evaluation, or that her opinions were denigrated by a hearing officer.  In addition, to finding that these claims were not exhausted by McKinney, this Court finds that none of these issues are properly before this Court in connection with MDCFL Case No. 487.

During the relevant time period in this case, parties were required to exhaust their administrative remedies before an IHO and HRO on to the issues they sought judicial review upon.  See Reinholdson v. State of Minnesota, No. Civ. 02-795 (ADM/AJB), 2002 WL 31026580 at *5 (D. Minn. Sept. 9, 2002) (citing 20 U.S.C. § 1215(i)(2)(A); see also Moubry v. Independent Sch. Dist. 696, 9 F. Supp.2d 1086, 1099 (D. Minn. 1998) ("[P]arties who seek to invoke the judicial expertise, of either a State or Federal Court, must first exhaust all state administrative remedies under the Act . . .").  Given the requirement of exhaustion, this Court first will examine whether the claims of procedural violations by McKinney were exhausted, and then if they were, whether or not a violation of McKinney's right to FAPE occurred.

a.   Mistreatment of the Parent by Members of the IEP Team

McKinney alleges that the School District has created a hostile environment at IEP meetings.  See Pl.'s Mem. at p. 29.  As a starting point, this Court finds that McKinney has failed to exhaust his claim that his parent was mistreated during the IEP team meetings as it relates to the development of the May 3, 2002 proposed IEP at issue in MDCFL Case No. 487.  There is no mention in the notice of appeal from the decision of the IHO, in the issues for appeal stated by the HRO, or in the opinion of the HRO that McKinney alleged that a member of the EP team mistreated her.  Nor has McKinney made any claims of futility in bringing this claim through the administrative process.  Therefore, these claims are not properly before this Court.[7]

_____

[7]   Further, this Court notes that the complaints of mistreatment of Emery by the IEP team are alleged to have occurred on September 29, 1999 and February of 2000, which have no bearing on the May 3, 2002 proposed IEP, the development of which was started in October of 2001.  See Pl.'s Mem. at pp. 3-4.  Further, no evidence was

b.   Creation of an IEP Outside of the IEP Meeting Process

This Court rejects the School District's assertion that McKinney has failed to exhaust his claim that the proposed IEP was not developed in an IEP meeting.   The School District argues that McKinney withdrew his cross-claims prior to the hearing before the IHO and that no procedural errors were raised in the Notice of the Appeal. See Def. Mem. at p. 10.   This assertion by the School District is correct.   See Mace Aff., Exs. A (Parental Notice of Appeal), D (Transcript from Rehearing Conference) at p. 7, AA (Student's Response to District's Statement of Objections and Cross Claims). However, the IHO in his Memorandum specifically addressed and rejected McKinney's argument that an IEP needed to be physically written and available for execution at the meeting attended by Emery.   See IHO Decision at pp. 22-23.   Further, McKinney in his Notice of Appeal did contest the proprietary of the IHO's decision that the proposed IEP for 2002 was appropriate.   See Mace Aff., Ex. A (Parental Notice of Appeal). Additionally, the HRO specifically addressed McKinney's argument that the proposed IEP was not created through the correct IEP process, and addressed whether an IEP must be physically written during an IEP meeting.   See HRO Decision at pp. 3, 7-8. Given that McKinney presented this issue to the IHO and the HRO for review, he has exhausted his administrative remedies as to this argument.   As such, the Court will proceed with deciding the merits of this claim.

McKinney argues that the proposed IEP was not developed in a legally constituted IEP meeting as required by the IDEA, 34 C.F.R. §§ 300.340-300.350.   See First Amended Complaint, p. 7, ¶ 17.   During the appeals hearing in MDCFL Case No.

---

presented to demonstrate that the IEP staff members were nothing but cordial to Emery

487, McKinney argued, "the proposed IEP was not created through a correct IEP team process.  Specifically, the Parent contends that, with the exception of the math present level of performance and goal, and positions of the ESY program, the proposed IEP was not created in a meeting with the Parent.  The Parent asserts that an IEP must be written in final form at an IEP meeting."  See HRO Decision at p. 7.  The School District argues that there is no requirement in the IDEA that an IEP must be physically written during an IEP meeting.  See Def.'s Mem. at p. 12 (citing 34 C.F.R. §§ 300.346).  The School District is correct.

"[T]he term individualized education program or IEP means a written statement for a child with a disability that is developed, reviewed, and revised in a meeting in accordance with §§ 300.341-300.350."  34 C.F.R. §§ 300.340(a).  This Court cannot find any authority within 34 C.F.R. §§ 300.340-300.350 that requires the presence of a parent during the drafting a proposed IEP or that the proposed IEP must be drafted during an IEP meeting.  See Verhoeven v. Brunswick School Committee, No. 98-400-P-DMC, 1999 WL 33117192 at *11 (D. Me. Sept. 9,1999) ("Regulations do not require that the actual words and phrases of an IEP be written at the meeting. To complete the final writing phase of the IEP document outside the [pupil evaluation team] is not a violation of regulations, nor does it compromise the procedural integrity of the process.").  Moreover, "individualized planning conferences are a way to provide parent involvement and protection to assure that appropriate services are provided to a handicapped child, . . ."  Rowley, 458 U.S. at 208 (quoting S.Rep. No. 94-198, at 12 (1975)).

The record before the Court and the proposed IEP demonstrate that McKinney's

and her representatives during the development of the IEP for 2002.

IEP team members, including Emery, all played a large part in the development of the IEP at November 19, and December 6, 2001 IEP meetings, even if one staff member put the proposed IEP into a final form after the meetings.  See IHO Decision at pp. 3, 4, 5 ¶¶ 14, 15, 16, 18, 19, 20, 22; see also Mace Aff, Ex. P (Due Process Transcript) at pp. 91-92, 306-09.

The record also demonstrates that Emery was given every reasonable opportunity to participate in developing the IEP after December 6, 2001.  During March 12, 2002 meeting between the parties, the School District offered Emery mediation or conciliation, to which she responded that she would agree to a facilitated IEP meeting. See IHO Decision at p. 6, ¶ 36; see also Mace Aff., Ex. P (Due Process Transcript) at pp. 107, 318.  The School District agreed and Emery was able to choose the facilitator. IHO Decision at p. 6; see also Mace Aff., Ex. P (Due Process Transcript) at pp. 318, 328.  Emery was provided with a draft of the goals and objectives for use at the facilitated meeting and the meeting itself occurred on April 11, 2002.  See IHO Decision at p. 6, ¶¶ 37-38; see also Mace Aff., Exs. C (Due Process Transcript) at p. 135, P (Due Process Transcript) at p. 323.  During this meeting, the IEP team, including Emery, developed the math goal that was included in the May 3, 2002 proposed IEP, the present level of performance, and worked on the math objective, which was not finished.   IHO Decision at p. 7, ¶ 39; see also Mace Aff., Exs. C (Due Process Transcript) at p.135, P (Due Process Transcript) at pp.135-38, 479.  The IEP was typed on the computer during that meeting.  See Mace Aff., Ex. C (Due Process Transcript) at p. 138.  Emery and her advocate all watched as the objective and goals regarding math were being typed into the IEP.  Id. at p. 477.  In addition, McKinney's present level on

current objectives was discussed at the meeting and Emery appeared to by happy with what was being written into the IEP.  Id, at 478.

On April 22, 2002, a second facilitated meeting was held.  See Mace Aff., Ex. C (Due Process Transcript) at p. 138.   During the meeting, the parties became deadlocked on the issue on how McKinney's present levels of performance in math should be written.  Id. at p. 479.  In addition, the IEP team and Emery could not agree on the period of time that the IEP should cover.  See IHO Decision at p. 7, ¶ 41.  In particular, Emery wanted an interim IEP; the School District did not.  See Mace Aff., Ex. C (Due Process Transcript) at p. 139.  The IEP team then agreed to develop an ESY program despite not being able to come up with an IEP.  See IHO Decision at p. 7, ¶ 42; see also Mace Aff., Ex. C (Due Process Transcript) at pp. 139-140.   During these discussions, Emery requested her son attend community education classes.  See IHO Decision at p. 7, ¶ 42; see also Mace Aff., Ex. C (Due Process Transcript) at p. 140. The IEP team reviewed the community education brochure and selected classes that would be appropriate for McKinney, reviewed the stay-put IEP, and selected goals and objectives for McKinney to work on during the ESY services.  Id.

A third facilitated meeting was scheduled for April 29, 2002, however, Emery refused to participate in that meeting.  See IHO Decision at p. 7, ¶ 43; see also Mace Aff., Ex. P at pp. 329-30.

After the April 22, 2002 meeting, the School District sent Emery a notice of a significant change to the stay-put IEP, which reflected the IEP team's discussion at the April 22, 2002 meeting as to ESY services.  See IHO Decision at p. 7, ¶ 44.  She then requested mediation regarding the ESY portion.  Id.  Instead of the mediation, the

School District sent Emery a notice for a team meeting to be held on May 13, 2002, so that Emery could meet the ESY staff and ask any questions she had regarding ESY.  Id. at p. 7, ¶ 45.  Emery did not attend this meeting.  Id. at p. 8, ¶ 45.  The School District worked to complete the arrangement for the ESY program and sent Emery a letter summarizing the plan.  Id. at pp. 7-8, ¶ 46.

The administrative record indicates that the proposed IEP was drafted during two facilitated IEP team meetings that included Emery.  To the extent Emery did not participate in the drafting in the proposed IEP, it was because she chose not to continue attending the facilitated IEP meetings.  The IDEA requires that parents must be given the opportunity to participate in IEP meetings.  See 34 C.F.R. Pt. 300, App. A (citing 34 C.F.R. § 300.344(a)(1)).  However, the opportunity for parents to participate in the IEP process does not translate to a requirement that the IEP can only be drafted in IEP meeting in the presence of a parent:

> The IEP meeting serves as a communication vehicle between parents and school personnel, and enables them, as equal participants, to make joint, informed decisions. . . . Parents are considered equal partners with school personnel in making these decisions, and the IEP team must consider the parents' concerns and the information that they provide regarding their child in developing, reviewing, and revising IEPs.
>
> The IEP team should work toward consensus, but the public agency has ultimate responsibility to ensure that the IEP includes the services that the child needs in order to receive FAPE. It is not appropriate to make IEP decisions based upon a majority "vote." If the team cannot reach consensus, the public agency must provide the parents with prior written notice of the agency's proposals or refusals, or both, regarding the child's educational program, and the parents have the right to seek resolution of any disagreements by initiating    an    impartial    due    process    hearing.

34 C.F.R. Pt. 300, App. A (II)(9) (internal citations omitted); <u>see also</u> 34 C.F.R. § 300.345(d) ("A meeting may be conducted without a parent in attendance if the public agency is unable to convince the parents that they should attend.").  The regulations contemplate that parents should be involved in developing an IEP, but if the parties cannot come to an agreement or if a parent chooses not to attend an IEP meeting, the responsibility of the final development of a proposed IEP to ensure a student receives FAPE falls on the appropriate agency, in this case the School District.  No where in the IDEA, its accompanying regulations, or in the case law can this Court find a statement that once a parent and district cannot come to an agreement regarding an EP, the process must cease or that a proposed IEP must only be drafted during an IEP meeting. <u>See</u> <u>Tammy S. v. Reedsburg Sch. Dist.</u>, 302 F. Supp.2d 959, 975 (W.D. Wisc. 2003) (finding that the IDEA's procedural protections do not mean that a parent must agree to a proposed action as to their child's education to avoid a violation of the IDEA's procedural requirements, regardless of the extent of the parent's participation in IEP meetings) (citing <u>Blackmon</u>, 198 F.3d at 657-58).  As such, the Court finds no procedural violation occurred, given the involvement by Emery and the rest of the IEP team, in the development of the May 3, 2002 IEP.

c.   <u>Prior Written Notice</u>

McKinney alleges that the School District violated the prior written notice requirements of 34 C.F.R. § 300.503 with regard to the May 2002 IEP.  <u>See</u> First Amended Complaint, at pp. 7-8, ¶ 17; <u>see also</u> Pl.'s Mem. at pp. 26-27.  The IHO found that the School District provided McKinney with prior written notice regarding all aspects of the proposed IEP, and that while the notice may not have specifically addressed the

requirements of 34 C.F.R. § 300.503(a) in the most organized manner, the School District demonstrated by the preponderance of the evidence that Emery received proper prior written notice and was able reject the May 3, 2002 IEP.  See IHO Decision at p. 18, ¶ 6.

34 C.F.R. § 300.503 provides in relevant part:

> b) Content of notice. The notice required under paragraph (a) of this section must include—
>
> (1) A description of the action proposed or refused by the agency;
>
> (2) An explanation of why the agency proposes or refuses to take the action;
>
> (3) A description of any other options that the agency considered and the reasons why those options were rejected;
>
> (4) A description of each evaluation procedure, test, record, or report the agency used as a basis for the proposed or refused action;
>
> (5) A description of any other factors that are relevant to the agency's proposal or refusal;
>
> (6) A statement that the parents of a child with a disability have protection under the procedural safeguards of this part and, if this notice is not an initial referral for evaluation, the means by which a copy of a description of the procedural safeguards can be obtained; and
>
> (7) Sources for parents to contact to obtain assistance in understanding the provisions of this part.

34 C.F.R. § 300.503(b);  see also 20 U.S.C. § 1415(c) (which includes the same requirements for prior written notice).

The procedural notice provided to Emery in this case, was a one-page document titled "Notice of Proposed Special Education Services."  See Mace Aff., Ex. B.  The

notice date is May 3, 2002.  Id.  The proposed IEP was attached to the notice.  Id.  The
notice communicated to McKinney's mother that "[y]our child's IEP, IFSP or coordinated
service plan is changed as noted.  The school district will proceed with this change on
the noted effective date unless you object in writing within 10 school days of receiving
this notice."  Id.  The effective date of the IEP was listed as May 22, 2002.  Id.  In the
section provided for the reasons for the proposal, the basis for the decision and other
options and factors considered, the notice stated "[c]all me or write me a note if you
have any concerns or input.  Since we are in the process of scheduling mediation,[8] if
there are any components of the IEP you want to discuss, we could do so at that time."
Id.  The contact listed on the notice was Brahms who was on the IEP team.  Id.  The
notice also informed Emery that she had protections under the procedural safeguards of
the IDEA and provided her with a list of sources to obtain assistance regarding her
rights and procedural safeguards.  Id.

      The HRO determined that the School District's notice was deficient as to the
second, fourth and fifth requirements of 34 C.F.R. § 300.503(b), but that such violation
of the notice requirement was de minimus.  See HRO Decision at pp. 10-13.  The
School District stated that although it disagreed with the finding of the HRO as to the
deficiency of the prior notice, it did not file a cross-appeal of the HRO decision with this
Court as the HRO found that the deficiencies were de minimus.  See Def.'s Mem. at p.
17.  McKinney agreed that the notice is deficient as to the second, fourth and fifth
requirements of 34 C.F.R. § 300.503(b), but disagreed with the HRO's finding and the
School District's argument, that lack of notice was de minimus and harmless.  See Pl.'s

---

[8]      No mediation regarding the May 3, 2002, IEP ever took place.

Mem. at pp. 26-27.

There is no dispute that the adequacy of an IEP is to be judged in part by whether procedural protections set forth by the IDEA were followed:

> When the elaborate and highly specific procedural safeguards embodied in § 1415 are contrasted with the general and somewhat imprecise substantive admonitions contained in the Act, we think that the importance Congress attached to these procedural safeguards cannot be gainsaid. It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process, see, e.g., §§ 1415(a)-(d) as it did upon the measurement of the resulting IEP against a substantive standard.

Rowley, 458 U.S. at 205-06.  However, not all procedural deficiencies mandate rejection of a proposed IEP.  The Eighth Circuit has adopted the following harmless error standard with regards to reviewing procedural deficiencies in the IEP process:

> An IEP should be set aside only if 'procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of educational benefits.'

S.D., 88 F.3d at 562 (quoting Roland M. v. Concord Sch. Comm., 910 F.2d 983, 994 (1st Cir. 1990)) (citations omitted).  The notice requirements of 34 C.F.R. § 300.503 "'must be interpreted in the context of the IDEA's procedural protections, particularly the right to a due process hearing . . .[,] [which is] the Act's primary procedural protection for parents.'"  Shaw v. School District of Columbia, 238 F. Supp.2d 127,137 (D.D.C. 2002) (quoting Kroot v. School District of Columbia, 800 F. Supp. 976, 982 (D.D.C. 1992).

This Court concludes that notice in this case did not compromise Emery's rights under the IDEA or the right of McKinney to an appropriate education.  Emery

participated in IEP team meetings on November 19, 2001 and December 6, 2001, and had access to her counsel and advocate.  See IHO Decision at pp. 3-4, ¶ 13-15, 19. Emery objected to the proposed IEP submitted to her by the School District on December 20, 2001 that arose out of the discussion during the previous IEP meetings. Id. at p. 5, ¶¶ 21-22.  On March 12, 2002, Emery asked for a meeting to discuss McKinney's behavior plan and a meeting was held on March 20, 2002, which included the attendance of Emery, her advocate, and counsel.  Id. at p. 6, ¶¶ 32-33.  During the meeting, Emery raised concerns that the present levels of performance sections in the IEP did not include sufficient information, that the goals were not measurable, and that McKinney should not be pulled out of the mainstream as much as was contemplated by the proposed IEP.  Id. at p. 6, ¶¶ 33-35.  Subsequently, the parties engaged in two facilitated meetings where the IEP team, including Emery, developed the math goal that was included in the May 3, 2002 proposed IEP, and also developed an ESY program in which Emery's suggestion that McKinney attend community education classes was incorporated.  Id. at pp. 6-7, ¶¶ 36-43.  As stated previously, a third facilitated meeting was scheduled for April 29, 2002, however, Emery refused to participate in that meeting. Id. at p. 7, ¶ 43.

The record shows that Emery, with the help of her counsel and advocate, participated throughout the IEP process.  Further, the IEP notice included the proposed IEP and Emery promptly noted her objection to the IEP.  In addition, Emery made a timely request for a due process hearing regarding the proposed IEP and was represented by counsel who had assisted her throughout the IEP process.  As such, this Court finds that the procedural irregularities of the notice did not prejudice the

participation of Emery, nor did it anyway affect the substantive validity of the proposed IEP.  The Court will not invalidate the proposed IEP based on procedural errors in the notice, as it was harmless.

        d.     Parent's Exclusion from Assistive Technology Evaluation Planning

McKinney argues that the IHO and HRO in MDCFL Case No. 390 found that there was no legal requirement that parents be involved in designing assistive technology evaluations, a finding that McKinney alleges is contrary to the IDEA.  See Pl.'s Mem. at p. 29.  McKinney also claims that "[a]ssistive technology issues were brought to hearing officers on two occasions as one of the key issues, and were also addressed in MDCFL Case No. 487."  Id. at p. 22.  In response, the School District argues that denial of an Assistive Technology ("AT") evaluation and AT devices services are "completely irrelevant" to MDCFL Case No. 487.  See Reply Memorandum in Support of Defendant's Motion for Judgment on the Record in Part/Partial Summary Judgment ("Reply Mem.") at p. 9.

McKinney has not directed this Court to nor can this Court find where the issue of exclusion from assistive technology evaluation planning was presented to or addressed by either the IHO or the HRO in MDCFL Case No. 487.  Although the issue of parental involvement in designing evaluations for assistive technologies may be relevant to other MDCFL proceedings brought by McKinney, this Court dose not find, based on the record, that it is relevant to the issue addressed by the IHO and HRO in MDCFL Case No. 487, i.e., whether the IEP proposed by School District on May 3, 2002 was appropriate for McKinney.  Therefore, this Court concludes that this issue is not properly before the Court.

e.    Trivialization of Parent's Input

This Court finds that McKinney has failed to exhaust his claim that the IHO denigrated the opinion of his parent, Emery.  There is no mention of this topic (or that the actions of IHOs in previous MDCFL matters made it impossible for her to participate in the hearing in MDCFL Case No. 487) in the notice of appeal from McKinney, in the issues for appeal before the HRO, in the portion of the student's brief to the HRO provided to this Court, or in the opinion of the HRO in MDCFL Case No. 487.  As such, this issue is not properly before the Court.

Further, this Court observes McKinney's claim that the IHO's[9] conduct in MDCFL Case No. 424 resulted in her refusing to return to another hearing process is unavailing. First, as stated previously, this allegation of mistreatment of Emery by an IHO occurred in a different case by a different individual[10] than the IHO who presided over the initial hearing in MDCFL Case No. 487.[11]  McKinney has provided no evidence that she believed that the IHO in MDCFL Case No. 487 would not consider her testimony.  In fact, there is no way for this Court to know how the IHO would have treated Emery's

---

[9]    The section title in McKinney's Memorandum states that trivialization of the parent's input occurred in MDCFL Case No. 424, however, in the body of the argument, McKinney alleges that this activity occurred in MDCFL Case No. 403.  See Pl.'s Mem. at p. 30.  The Affidavit of Sonja Kerr lists the transcript including, the offending conduct by the IHO, as originating from MDCFL Case No. 424.  See Kerr Aff., ¶ 14.

[10]    The IHO in MDCFL Case No. 424 was Kenneth Ubong Udoibok.  See Kerr Aff., Ex. J.

[11]    The allegedly offending comment by the IHO in MDCFL Case No. 424 was, "[j]ust so you know, its an opinion of a mother."  See Kerr Aff., Ex. K at p. 310.  In examining this statement in the context of the entire exchange, this Court has determined that this comment did not trivialize or denigrate Emery.  See Report and Recommendation, Section II.C.1, issued contemporaneously with this decision.

testimony at the hearing, as she was not present.

f.       Exclusion of the Parent's Advocate

McKinney argues that her advocate was wrongfully excluded from MDCFL Case No. 424.  This Court finds that any exclusion of Emery's advocate in MDCFL Case No. 424 is not relevant to the hearing process in MDCFL Case No. 487.[12]  The record in MDCFL Case No. 487 reflects that Emery's advocate, Grieser, was present during the hearing before the IHO.  See IHO Decision at p. 16, ¶ 107.  Further, there is no indication in the record that this issue was raised to the HRO in MDCFL Case No. 487, and therefore, this issue has not been properly exhausted by McKinney.

g.       IHO's Exclusion of the Parent's Expert Witness

McKinney complains that the exclusion of his expert witness, Donita O'Donnell ("O'Donnell"), by the IHO was inappropriate.  See Pl.'s Mem. at p. 31.  McKinney also argues that the HRO erred by failing to address the issue in his appeal decision.  Id. The School District in turn asserts the issue of whether the IHO properly excluded the testimony of O'Donnell is not properly before this Court as McKinney did not raise any procedural errors for appeal to the HRO and therefore, he waived the right to raise such issues.  See Def.'s Mem. at p. 20.

The issue of excluding McKinney's expert was raised to the IHO.  During the hearing, the IHO noted that the only proffer of the testimony regarding O'Donnell was McKinney's list of witness, where McKinney summarized the anticipated testimony as follows:

---

[12]    McKinney cites to paragraph 11 of his First Amended Complaint, which pertains to MDCFL Case No. 424, thereby suggesting that McKinney did not allege that the exclusion occurred in MDCFL Case No. 487.  See Pl.s' Mem. at p. 30.

'Ms. O'Donnell is an experienced special education teacher and administrator. She has written books on IEP development and provided IEP training to school districts. Her resume has been submitted. Ms. O'Donnell was asked to review Matthew's IEPs for consistency with the IDEA, especially the present level of performance sections. She is expected to give an expert opinion on IEP development and whether Mathew's IEPs meet the requirements of good practice in the IDEA.'

<u>See</u> Mace Aff., Ex. C (Due Process Transcript) at p. 273.

During the hearing before the IHO, the parties discussed the issue of O'Donnell's testimony. Attorney Kerr argued that O'Donnell's testimony should be given the same credence as the district employees and that she would give an "opinion about whether or not the process of the IEP, including the present level of performance is consistent with good practice in the IDEA." <u>See</u> Mace Aff., Ex. C (Due Process Transcript) pp. 274-275. Attorney Kerr also asserted that the expert testimony would be useful in showing that the School District's teachers lacked training on how to properly develop an IEP. <u>Id.</u> at 275. Attorney Kerr emphasized that an expert was needed to address whether the process was consistent with good IEP development. <u>Id.</u> at 276. The School District responded by arguing that there was no issue in the case as to training on how to properly develop an IEP and therefore, testimony on that issue by the expert was inappropriate. <u>Id.</u> Further, the School District objected to any testimony as to the standard for present level of performance as the standard is set by law. <u>Id.</u> The IHO also expressed a concern that the proposed expert testimony went to the issue of the process in developing IEPs, as opposed the development of the IEP from a procedural and substantive standpoint. <u>Id.</u> at pp. 280-281. Attorney Kerr responded by stating, that by "process" she meant to the procedures used to develop the IEP, which "are very

important in terms of the law." Id at pp. 281.  The IHO responded that expert could not instruct him on what the law was regarding the procedures set forth by state and federal regulations.  Id.

In his decision to exclude O'Donnell, the IHO noted that McKinney had provided little information to him as what his expert's opinions would be.  Id. at pp. 283-84, 287. The IHO decided to exclude the expert on the basis that it was unlikely that she would provide opinions of sufficient probative value in the proceeding.  Id. at p. 284, 288. However, the IHO allowed the parties to submit additional written arguments or authority regarding the issue of expert testimony.

Pursuant to the IHO's request, the parties submitted written arguments to the IHO on whether O'Donnell should be allowed to testify.  In his submission, McKinney asserted that O'Donnell would offer opinion testimony as to the appropriateness of process used by the School District to develop IEPs, as well as the appropriateness as to the substantive portions of any proposed IEP.  See Mace Aff., Ex. K, at p. 7.  Further, McKinney wanted to present the expert testimony of O'Donnell in order to rebut Peterson's testimony as to: (1) the means and practices by which IEPs are written in the School District; (2) staff development she provides teachers in the District on writing IEPs; (3) the basis of her opinion on how IEPs should be written; (4) the way McKinney's IEP was developed; and (5) "specifically, her opinion of whether Matthew's IEP, as developed, and as written, is appropriate."  Id.  The IHO did not change his decision to exclude the expert.

McKinney also submitted the issue of the exclusion of O'Donnell to the HRO to the HRO in MDCFL Case No. 487.  See Kerr Aff., Ex. Y.  The argument in McKinney's

Principal Brief to the HRO regarding the exclusion of O'Donnell was as follows:

> The parent proffered an expert witness on the IEP team process, Donita O'Donnell.  The IHO refused to let this expert testify, asserting that this information about 'process' was not relevant.  Yet administrator Cheri Peterson was permitted to testify at length about the IEP team process used in the School District, whether the IEP was appropriate and so forth.  It was inherently unfair for the IHO to exclude the testimony of Donita O'Donnell.  The parent had every right to offer a witness to testify that the process was "wrong" as the District had to offer Ms. Peterson to say that the process and procedure resulting in the May 2002 IEP was "right."

Id.  The HRO did not address this issue in his decision.  This Court finds that the issue of O'Donnell's testimony was presented to both the IHO and the HRO and therefore, McKinney has met his burden as to exhaustion.

Nevertheless, despite the exhaustion of this issue, McKinney has not demonstrated that the IHO erred in excluding the testimony of O'Donnell.  In his memorandum to the Court, McKinney states that O'Donnell was being called to refute the testimony put on by the School District that the process used by the School District was consistent with full parental involvement, and to discuss whether McKinney's teachers were properly trained in the use of the IEP process, the requirements of prior written notice, and how a present level of performance should be developed and created for a student like McKinney.  See Pl.'s Mem. at pp. 31-32.

Parents are allowed under the IDEA to bring special education experts to administrative hearings.  See Gill v. Columbia 93 Sch. Dist., 217 F.3d 1027, 1035 (8th Cir. 2000) (citing 20 U.S.C. § 1415(h)).  However, "court[s] should ordinarily defer to the administrative panel's judgment in building the record . . . ."  Id. at 1037 (citing E.S., 135 F.3d at 569; S.D., 88 F.3d at 560).

In this case, McKinney submitted a proffer of O'Donnell's expert testimony to show whether the process of the development of the May 3, 2002 IEP was consistent with good IEP development.  However, given the vagueness of the proffer, this Court cannot determine if the expert opinion should have been admitted.  This Court does not even know if O'Donnell would have testified that the process used by the School District was consistent with good practice under the IDEA or not.  Nor can this Court discern as to what O'Donnell would have testified regarding the substantive requirement of including a student's present level of performance in an IEP.  Based on McKinney's inadequate proffer, this Court does not have basis to disturb the decision of the IHO to exclude the testimony of O'Donnell.

This Court also finds that expert testimony regarding how the School District's teachers lacked training on the development of IEPs was not relevant to MDCFL Case No. 487, as no claim of inappropriate training as to the IEP development was addressed by the administrative process.  McKinney, in his "Student's Reponses to School District Statement of Objection," to the IHO, raised the cross-claim that from December 20, 2001 until March 20, 2002, the school district lacked adequate training as to developing IEPs.  See Mace Aff., Ex. AA (Student's Response to District's Statement of Objections and Cross Claims).  However, McKinney's counsel subsequently waived all cross-claims asserted by him, thus, removing from the case the issue of training of teachers on the development of IEPs.  See Mace Aff., Ex. D (Transcript from Prehearing Conference) at p. 7.

Further, to the extent O'Donnell was going to testify as to the procedures required by the IDEA or what must be included in a student's present level of

performance, her testimony was also properly excluded.   "[E]xpert testimony on legal matters is not admissible."   Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc., 320 F.3d 838, 841 (8th Cir. 2003); see also Hygh v. Jacobs, 961 F.2d 359, 364 (2nd Cir. 1992) (finding that expert testimony is objectionable where testimony explicitly or implicitly communicates a legal standard) (citations omitted).

McKinney argues that it was improper to allow School District witnesses to testify as to whether the process used was consistent with parental involvement and not allow O'Donnell to refute that contention.   See Pl.'s Memo. at p. 31.[13]   Based on the record before this Court, the portions of Peterson's testimony to which McKinney's counsel objected were as follows:

- It would be practically impossible to draft an IEP during an IEP meeting given its length and complexity, to which attorney Kerr objected as opinion testimony which goes to the policies and practices as to how IEPs are written. See Kerr Aff., Ex. S, p. 4.

- Initially, Peterson was asked to opine what she thought about McKinney's IEP, to which McKinney's counsel objected on grounds that she was not qualified as an expert. See Kerr Aff., Ex. U, p. 1. The IHO asked the district counsel to break up the question in order to determine it testimony was proper. Id. at p. 2. The School District's counsel then asked Peterson "[d]o you have any expectations of what you're going to see in a present level of performance section in a proposed IEP?" Id. at p. 4. McKinney's counsel objected to this question on grounds that Peterson's personal expectations were irrelevant, which was overruled by the IHO on the grounds that Peterson was the assistant director of education for the School District. Id.

First, Peterson was not offering expert testimony as to parental involvement or what must be listed in present level of performance section in a proposed IEP under the

---

[13]    This Court reiterates that it does not have before it sufficient information to determine what testimony O'Donnell would have given or if she would have disagreed with the Peterson's testimony.  Counsel's assertion that the expert would have rebutted the opinions of Peterson is not enough for the Court to conclude that the IHO was wrong in his decision to exclude the testimony.

IDEA, but testimony, in her position as the Assistant Special Education for the School District, as to why the School District does not normally draft IEPs during IEP meetings, and what she, in her position within the School District, would expect a present level of performance section to include.  See generally, D.B. v. Ocean Tp. Bd. of Educ., 985 F. Supp. 457, 510 n. 42 (D.N.J. 1997) (finding that while opinion testimony by a party or an employee of a party should be evaluated in light of their position in the case, a trier of fact may consider it and give it such weight as appropriate); see also Grant v. Independent School District No. 11, No. Civ. 02-795 (ADM/AJB), 2005 WL 1539805 at *16 (D. Minn. June 30, 2005) ("The IHO was entitled to weigh the credibility of each witness and weigh the cumulative testimony in reaching his decision.").  Second, expert testimony was not required by the IHO on whether an IEP could be written outside of the presence of a parent.  This a legal issue, which is not appropriate for expert testimony.  Third, this Court has already found that an IEP need not be written in the presence of a parent.  See Report and Recommendation, Section II.A.2.b, supra.  As such, O'Donnell was not necessary to rebut Peterson's testimony as to parental involvement.

McKinney also cited to the testimony of McKinney's teacher, Brahms, who allegedly suggested that IEP development consists of an IEP team meeting where a teacher takes notes, does not show the parent the notes, adopts any suggestions made by the team that are not objected to by a parent and then writes up the proposed IEP without the parent.  See Pl.s' Mem. at p. 10 (citing Kerr Aff., Ex. R).  This misstates Brahm's testimony.  Brahms never offered any opinion as to proper IEP development. She only testified that the IEP team made a proposal to Emery, she did not object to it,

they added it to the IEP, and that they never offered Emery any of the notes.  <u>See</u> Kerr

Aff., Ex. R (Due Process Transcript) at pp. 187, 189. This Court has already found that

an IEP does not need to be drafted at an IEP meeting and that Emery was provided

with an adequate opportunity participate in the IEP process.  In other words, any expert

opinion by O'Donnell as to the process allegedly described by Brahms would have little

relevance to the development of the May 3, 2002 IEP.

For all the reasons stated above, the IHO did not error in excluding O'Donnell's

expert testimony in MDCFL Case No. 487.

h.    <u>Extended School Year Services</u>

McKinney's first claim of an IDEA violation pertaining to ESY services is that the

School District agreed to ensure ESY services during the summer of 2000 in Las

Vegas, Nevada while McKinney was visiting his father, then impermissibly backed out of

its promise.  <u>See</u> Pl.'s Mem. at pp. 32-33.  This Court does not understand how the

failure to provide ESY services during the summer of 2000 has any relevance to

whether the IEP proposed in May 2002 was appropriate for McKinney or whether the

ESY services offered for the Summer of 2002 was appropriate.  Further, neither the IHO

nor HRO dealt with this issue in MDCFL Case No. 487 and therefore, it is not properly

before this Court because it is an unexhausted claim.

McKinney's second claim of an IDEA violation with regards to ESY is the that the

School District delayed informing McKinney of its plan for ESY until April 25, 2002,

which made it impossible for him to properly challenge the ESY proposal before the

summer.  <u>Id.</u> at pp. 33-34.  The School District argues that this argument brought by

McKinney as to the 2002 proposal for ESY services is not properly before this Court as

the McKinney failed to exhaust his administrative remedies as to this issue.  <u>See</u> Def.'s Mem. at p. 18.   This Court agrees.   The HRO in his decision found that the record supports the finding that the issue regarding the late ESY proposal was voluntarily dismissed by the parent and was therefore, moot.  <u>See</u> HRO Decision at p. 16.   The HRO's finding is supported by the pre-hearing conference before the IHO where McKinney's counsel represented that her cross-claims regarding MDCFL Case No. 487 were withdrawn.  <u>See</u> Mace Aff., Ex. D (Transcript from Prehearing Conference) at p. 7. As such, this Court finds that McKinney did not properly exhaust his administrative remedies as to this claim.

Further, even if this claim had not been withdrawn, this Court does not believe that the ESY proposal date of April 25, 2002 was inappropriate given the circumstances. "Generally, matters of timing are left to the school board's discretion under 34 C.F.R. § 300.343.   That discretion is abused, however, when decisions are delayed for illegitimate purposes--such as to deny parents the ability to exercise their due process rights guaranteed under other sections of the regulations."  <u>Reusch v. Fountain</u>, 872 F. Supp. 1421, 1433 (D. Md. 1994).   The Officer of Special Education Programs in discussing the regulations dealing with ESY services provides:

> There is no need to specify a timeline for determining whether a child should receive ESY services. Public agencies are expected to ensure that these determinations are made in a <u>timely manner</u> so that children with disabilities who require ESY services in order to receive FAPE can receive the necessary services.

64 Fed. Reg. 12574, 12576 (March 12, 1999) (emphasis added).

Here, IEP meetings were held on November 19, 2001 and December 6, 2001, which included a discussion of ESY services.  <u>See</u> IHO Decision at pp. 3-4 ¶¶ 15, 19,

21.   These meetings led to the December 21, 2001 proposed IEP, which, as stated previously, Emery rejected.  Id. at p. 5, ¶¶ 23-25.  Subsequently, the School District sent letters to Emery on January 7, 2002, January 30, 2002, February 8, 2002, and February 25, 2002, in an attempt to arrange a meeting with Emery in order to work on the objections she had to the December 20, 2001 IEP proposal.  Id. at p. 5, ¶¶ 26-29; see also Mace Aff., Ex. P (Due Process Transcript) at p. 314.  Emery did not respond to the School District's correspondence.  See IHO Decision at p. 5, ¶¶ 26-29.  On March 4, 2002, the School District sent another letter to Emery communicating to her that a meeting would be held on March 6, 2002, and Emery responded through her counsel that she would not attend the meeting because Emery believed it would be futile.  See IHO Decision at p. 6, ¶ 31; see also Mace Aff., Ex. P (Due Process Transcript) at pp. 315-16.  On March 12, 2002, Emery requested a meeting to discuss McKinney's behavior plan.  See IHO Decision at p. 6, ¶¶ 33-35.  By agreement of the parties, facilitated meetings were held on April 11, 2002 and April 22, 2002, to work on McKinney's IEP.  Id. at p. 6-7, ¶ 36-39, 41.   During the April 22, 2002 facilitated IEP meeting, the IEP team dealt with issue of developing an ESY program.  Id. at p. 7, ¶ 41.

In sum, the record evidences that the proceedings in this matter involved disagreements between Emery and the School District causing a final decision to be delayed.  McKinney's parent cannot, however, claim that the School District was at fault in the delay of issuing an ESY program when she did not respond over a two-month period to the School District's repeated requests to have the parties work out their

differences as to the December 20, 2001 proposed IEP.[14]  See David P. v. Lower

Merion School Dist., No. Civ. A. 98-1856, 1998 WL 720819 at *4 (E.D. Pa., Sept. 18,

1998) (The "IDEA places joint responsibility on the state and parents to ensure that

disabled children receive an appropriate education without unnecessary delay.").  As

such, this Court cannot find that the School District denied McKinney ESY services for

the summer of 2002.

### 3.    Substantive Violations

McKinney's First Amended Complaint alleges that the May 2002 proposed IEP

lacked current levels of performance, 34 C.F.R. § 300.347.  See First Amended

Complaint, p. 8, ¶ 17.  "'For an IEP to pass substantive muster, it must be 'reasonably

calculated to enable the child to receive educational benefits.'"  CJN v. Minneapolis

Public Schools, 323 F.3d 630, 634 (8th Cir. 2003) (citing Rowley, 458 U.S. at 206-07).

Each IEP must include a statement of the present levels of educational performance.

See 20 U.S.C. § 1414(d)(1)(A); 34 C.F.R. § 300.347(a)(1);[15] Rowley, 458 U.S. at 182.

---

[14]    Plaintiff cites to Reusch, supra, for the proposition that the School District's April
25, 2002 proposal for ESY services was improper.  See Pl.'s Mem. at p. 33.  However,
Reusch is distinguished from the present case in that the Court in Reusch, found that
the "delays have, in effect, fostered the overall scheme of [defendant] to minimize the
availability of ESY to disabled children."  872 F. Supp. at 1433.  Given the
circumstances and facts in this case, this Court does not find that the School District
acted with the purpose to deny ESY services to McKinney.  To the contrary, this Court
finds that the School District was diligent as to proposing ESY services given the
situation.

[15]    34 CFR § 300.347(a)(1) provides in relevant part:

> (a) General. The IEP for each child with a disability must
> include--
> (1) A statement of the child's present levels of educational
> performance, including--

The School District argues that the proposed IEP contained an adequate assessment of McKinney's present levels of performance as demonstrated by inclusion in the IEP of: (1) McKinney's most recent progress report; (2) teacher's narrative observations; (3) how McKinney's disability affected his involvement in the general curriculum; (4) informal assessments in the areas of reading, writing and math; (5) and a copy of the McKinney's Woodcock-Johnson scores from May of 2001.  See Def.'s Mem. at pp. 6-7 (citing Mace Aff., Ex. B).  McKinney  has provided this Court with no argument in his memorandum regarding why the present level of performance included in the IEP was unsatisfactory, and thus, this Court concludes that he has abandoned his claim.[16]

---

(i)     How the child's disability affects the child's involvement and progress in the general curriculum (i.e., the same curriculum as for nondisabled children). . . .

[16]     This Court notes that at the appeal level, the HRO rejected McKinney's argument that the IEP's present level of performance as to reading and communication was unsupported by objective data, and even noted that the proposed IEP contained more detailed information regarding McKinney's present level of performance than did the stay-put IEP to which Emery agreed to.  See HRO Decision at pp. 13-15.  This Court agrees.  The sections for math, reading/writing, communication, behavior, fine motor and gross motor skills all contain a section for McKinney's present levels of performance.  The present levels of performance sections contain current objectives for McKinney, and the current level of McKinney is provided in percentage points to show McKinney's accuracy as to the various objectives.  See Mace Aff., Ex. B (May 3, 2000 Proposed IEP).  In addition, the proposed IEP contains the McKinney's Woodcock-Johnson scores from May of 2001, which included an assessment of McKinney's skills in reading, mathematics, written language, and knowledge.  See Mace Aff., Ex. B (May 3, 2000 Proposed IEP) at p. 28.  Moreover, the IEP contained results from the Iowa Basic Skills Test, taken in the Fall of 2001, showing how McKinney's disability affects his involvement and progress in the general curriculum.  Id.  Further, the IEP contained a Minnesota Alternative Assessment in the area of math, reading, and writing.  Id. at pp. 19-26.  In the IEP's reading and writing sections, the present levels of performance also provided that the following informal assessments were performed: Developmental, Reading Assessment, Slosson Oral Reading Test; and How to Determine Instructional

**B.**     **Motion for Summary Judgment**

The School District has asked this Court to dismiss McKinney's claims regarding the provision of FAPE for the 2001-02 and 2002-03 school years and the claims regarding the School District's ESY proposal for the Summer of 2002, on the grounds that he failed to exhaust administrative remedies with respect to these claims.  See Def.'s Mem. at pp. 8-9, 18-20, 24.

In addition, the School District has asked this Court dismiss any claim regarding the 2003-04 school year on the grounds that McKinney has not submitted any such claim to the administrative process and his First Amended Complaint does not contain any claims involving the 2003-2004 school year.  See Defendant's Reply Memorandum to Plaintiff's Supplemental Memorandum in Regard to Defendant's Motion for Partial Summary Judgment ("Def.'s Supp. Mem.") at pp. 14-15, 20.  In this regard, McKinney has alleged in his Supplemental Memorandum that in the fall of 2003, the paraprofessional staff were still not properly trained to handle his augmentative communication device, thereby evidencing that the problems, previously complained of in other hearings, are still occurring.  See Plaintiff's Supplemental Memorandum in Response to Defendant's Motion for Partial Summary Judgment ("Pl.s' Supp. Mem.") at p. 8.  The School District maintains that McKinney is trying to bring a claim to this Court

_____

Level.  Id. at p. 5.  Each section also contained narrative observations from McKinney's teachers as to his progress and present level of performance.

The standard by which to measure the adequacy of benefits provided under the IDEA is based "upon a qualitative standard--namely, that 'some benefit' would have to result from the educational process."  See Moubry, 9 F. Supp.2d at 1104 (citing Rowley, 458 U.S. at 200).  This Court finds that present level of performance as contained in the proposed IEP provided an adequate baseline under the IDEA to ensure some benefit to McKinney.

that he continues to be denied FAPE because of lack of staff training, when he has failed to exhaust any claims relating to the 2003-2004 school year.

Finally, the School District claims that McKinney has waived the right to bring a claim regarding comprehensive systems of personal development, as to MDCFL Case No. 487, for failure to exhaust administrative remedies. See Def.'s Supp. Mem. at p. 4.

### 1.    Summary Judgment Standard

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celeotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see also Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219 (8th Cir. 1999).  "[S]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327.  "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"  DePugh v. Smith, 880 F. Supp. 651, 656 (N. D. Iowa 1995) (quoting Anderson, 477 U.S. at 248).

The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed.  Celotex Corp., 477 U.S. at 322-23; see also Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).   If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for

trial. <u>Anderson</u>, 477 U.S. at 256; <u>Krenik v. County of LeSueur</u>, 47 F.3d 953, 957 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." <u>Krenik</u>, 47 F.3d at 957.

### 2.    Analysis

As stated previously, judicial review under the IDEA, 20 U.S.C. § 1415(i)(2), is not available "until a plaintiff has exhausted the administrative remedies provided under §§ 1415(f) and (g) unless: (1) exhaustion would be futile; (2) exhaustion would fail to provide adequate relief; (3) 'an agency has adopted a policy or pursued a practice of general applicability that is contrary to law.'" <u>Megan C. v. Independent School Dist. No. 625</u>, 57 F. Supp.2d 776, 789 (D. Minn. 1999) (quoting <u>Association for Community Living in Colorado v. Romer</u>, 992 F.2d 1040, 1043-44 (10th Cir. 1993)) (citations omitted); <u>see also</u> Report and Recommendation, Section II.A.2., <u>supra</u>.  This Court will now proceed with its analysis as to whether summary judgment should be granted as to McKinney's deprivation of FAPE claims involving the 2001-2002, 2002-2003, and 2003-2004 school years or claims involving comprehensive systems of personal development for failure to exhaust administrative remedies.[17]

### a.    Deprivation of FAPE During the 2001-2002, 2002-2003, and 2003-2004 School Years

The School District asserts that McKinney raised as a cross-claim that he had been denied FAPE for the 2001-2002 school year, but then withdrew the cross claim.

---

[17]    This Court has already found that McKinney did not exhaust its administrative remedies as to the ESY claim and also found there was no procedural violation.  <u>See</u> Report and Recommendation, Section II.A.2.h, <u>supra</u>.

See Def.'s Mem. at p. 9 (citing Mace Aff., Ex. D at p. 7).  In fact, McKinney's June 2, 2002 Response to Statement of Objections and Cross Claims in MDCFL Case No. 487 raised the following cross-claim:  "Matthew has been denied and continues to be denies a free and appropriate public education in the least restrictive environment.  He has failed to make progress consistent with his abilities and potential, which is that of a student with average intelligence."   See Mace Aff., Ex. AA (Student's Response to District's Statement of Objections and Cross Claims).    McKinney's counsel subsequently waived all cross claims asserted by him.  See Mace Aff., Ex. D (Transcript from Prehearing Conference) at p. 7.  As to the claims that the School District denied McKinney FAPE for the 2002-2003 and 2003-2004 school years, McKinney has never brought such a claim before any administrative body, including the IHO or HRO in MDCFL Case No. 487.

McKinney asserts, "filing one state complaint, requesting four administrative hearings and proceeding through three of those hearings is sufficient exhaustion."  See Pl.'s Mem. at p. 20; see also Pl.'s Supp. Mem. at p. 8 ("When a child has exhausted an administrative process and then another IEP is proposed and the parties' dispute is about the same type of problems, parents are not required to re-exhaust administratively.").

The burden of demonstrating futility or inadequacy of exhaustion of administrative remedies before bringing civil action under the IDEA rests on party seeking to bypass the administrative procedures.  See Gean v. Hattaway, 330 F.3d 758, 773 (6th Cir. 2003) (citing  Honig v. Doe, 484 U.S. 305, 327 (1988); 20 U.S.C. § 1415(i)(2)).  McKinney has not met his burden as to the futility of bringing these claims

through the full administrative process as required by the IDEA.

Moreover, this Court finds that any claim by McKinney that he was denied FAPE during the 2003-2004 school year is not properly before the Court as it has not been plead within his First Amended Complaint.  See Def.'s Supp. Mem. at p. 20.  The First Amended Complaint does contain the allegation that McKinney was denied FAPE through the course of several years, including the 2002-2003 school year to the present. See First Amended Complaint, at p. 9, ¶ 4.  However, the First Amended Complaint was signed on January 27, 2003; as such, it could not include the 2003-2004 school year. Therefore, any denial of FAPE for the 2003-2004 school year is not even before this Court.[18]

The School District maintains that since McKinney failed to exhaust his denial of FAPE claims for the 2001-2002 and 2002-03 school years, he waived his right to ever bring these claims to a district court even if the administrative process is subsequently exhausted.  See Def.'s Mem. at pp. 8-9.  The School District cites to Moubry v. Independent Sch. Dist. 696, 9 F. Supp.2d 1086, 1099 (D. Minn. 1998) ("Moubry II"); Moubry v. Independent Sch. Dist. 696, 951 F. Supp. 867, 886-87 (D. Minn. 1996) ("Moubry I"); Doe v. Arlington County Sch. Bd., 41 F. Supp.2d 599, 608 (E.D. Va. 1999); and Blackmon v. Springfield R-XII School School District, 198 F.3d 648, 655 (8th Cir. 1999), in support of its proposition that a non-exhausted claim must be deemed waived. See Def.'s Mem. at pp. 8-9; Def.'s Supp. Mem. at pp. 4-5.

---

[18]     Given that McKinney did not even raise the issue of denial of FAPE for the 2003-04 school year in his First Amended Complaint, this Court will not address the School District's contention that McKinney waived the right to assert this claim because his mother has now placed him into home schooling without seeking a due process hearing.  See Def.'s Supp. Mem. at p. 19.

In Moubry II, the plaintiff presented the issue of speech services to the IHO and not the HRO, but did appeal the IHO's admission of evidence, which related to that issue to the HRO.  9 F. Supp.2d at 1100.  In barring the consideration of the speech services issue, the court found that "[a]t a minimum, the failure to raise, and to preserve, an issue in the administrative process--absent a demonstration that circumstances warrant a relaxation of the exhaustion requirement--renders the unappealed HO's decision 'final,' and constitutes a waiver of such an issue in a subsequent civil action." Id. at 1100.

In Moubry I, the plaintiff sought compensatory education damages related to private school expenses.  951 F. Supp. at 886.  In addition to compensatory education, the plaintiff sought to be reimbursed for the costs that were related to his stay in Madison, inclusive of his travel and telephone expenses.  Id. at 886-87.  The court found that expenses issue had been waived by the plaintiff's failure to preserve the claim at the administrative level.  Id. at 887.

In Doe v. Arlington County Sch. Bd., supra, plaintiffs brought a § 504 claim under the Rehabilitation Act of 1973 that was derivative of their IDEA claim.  41 F. Supp.2d at 607.  "The gist of the claim is precisely the same as the plaintiffs' IDEA claim that the student was supposedly denied an appropriate education."  Id.  The § 504 claim was brought by the plaintiff before the hearing officer, but the plaintiff failed to raise the issue for appeal before the hearing review officer (HRO).  Id. at 608.  The court found that "[a]n issue raised in the initial due process hearing, but not argued and briefed on appeal, is deemed waived."  (citing Moubry, 9 F. Supp.2d at 1099).

Finally, the Eighth Circuit in Blackmon, supra, dealt with the issue of whether a

school district's IEP complied with the procedural and substantive requirements of the IDEA. The Court found that the plaintiff was barred from bring her procedural complaints regarding the IEP because she explicitly waived procedural deficiencies and because she did not address her procedural complaints at the administrative level. 198 F.3d at 655-56.

As stated by the School District, the only issue before the IHO and HRO in the MDCFL Case No. 487 proceeding was whether the IEP proposed for McKinney for the 2001-2002 school year by the School District was proper. Within that issue are subsumed the sub-issues of whether the IEP met the procedural and substantive requirements of the IDEA. This Court believes that the cases cited by the School District stand for the proposition that if an issue related to a claim is not brought to any administrative level, or if a claim is raised to a hearing officer and not appealed to a hearing review officer, then that non-exhausted issue is waived and cannot be brought again. Since McKinney withdrew his cross-claims prior to the IHO being able to consider his denial of FAPE claim for the 2001-2002 school year, this Court concludes that he has waived this claim and is precluded from asserting it again. However, this Court does not believe that these cases apply to the situation at hand where McKinney argued the denial of FAPE claim for the 2002-2003 school year, which is not directly related to the issue of whether the May 2002 proposed IEP was proper and was never addressed by the IHO. Although summary judgment of McKinney's claim of denial of FAPE for the 2002-03 school year should be granted for failure to exhaust administrative remedies, this Court cannot conclude that McKinney has forever waived his right to bring this claim before a court after he has properly exhausted the claim.

In sum, summary judgment should be granted to the School District on McKinney's claims that he was denied FAPE for the 2001-2001 and 2002-2003 school years, but McKinney shall not be precluded from exhausting his claims with respect to the 2002-2003 school year.   In addition, the School District's motion for summary judgment is denied as to any claim relating to the 2003-2004 school year, as the issue was never presented by McKinney in his First Amended Complaint before the Court.

### b.   Comprehensive System of Personal Development

McKinney argues that the School District is required to develop a Comprehensive System of Personal Development ("CSPD")[19] "in order to address the staff development

---

[19]     In order to receive financial assistance under the IDEA, a state must demonstrate that it has in place a comprehensive system of personnel development that:

> [I]s designed to ensure an adequate supply of qualified special education, regular education, and related services personnel that meets the requirements for a State improvement plan relating to personnel development in subsections (b)(2)(B) and (c)(3)(D) of section 1453 of this title.

20 U.S.C. § 1412(a)(14).   In other words, whether a state or a school district should have a CSPD goes to the issue of proper training of its school staff.

Under 20 U.S.C. § 1454(c)(3)(D), each state is required to have an improvement plan, which must describe:

> [H]ow the State will address the identified needs for in-service and pre-service preparation to ensure that all personnel who work with children with disabilities (including both professional and paraprofessional personnel who provide special education, general education, related services, or early intervention services) have the skills and knowledge necessary to meet the needs of children with disabilities, including a description of how − [the state will comply with ten different categories bearing on training and development] . . . ."

concerns repeatedly raised by Plaintiff McKinney." <u>See</u> Pl.s' Supp. Mem. at p. 5. The School District, in turn, argues that McKinney waived the CSPD issue as to MDCFL Case No. 487 and also argues that in any event, a school district is not required to develop a CSPD. <u>See</u> Def.'s Supp. Mem. at pp. 3-4.

Originally, McKinney brought a cross-claim prior to the hearing before the IHO in MDCFL Case No. 487 alleging that "[t]he School District does not have a comprehensive system of personnel development." <u>See</u> Mace Aff., Ex. AA (Student's Response to District's Statement of Objections and Cross Claims) at p. 4 (citing 20 U.S.C. § 1413(a)(3)).   However, McKinney voluntarily withdrew this all of his cross-claims, including the claims that the School District does not have a comprehensive system of personnel development and training issues. <u>See</u> Mace Aff., Ex. D (Transcript from Prehearing Conference) at pp. 6-7.   McKinney claims that he did not pursue his cross-claim regarding the School District's lack of a comprehensive system of personnel development in MDCFL Case No. 487, because he believed it would have been futile to do so, given the HRO's decision in MDCFL Case No. 424, which was rendered almost a year before McKinney withdrew his cross claims in MDCFL Case No. 487.[20]   <u>See</u> Pl.'s Supp. Memo. at p. 2.

---

In addition, regulations promulgated by the Department of Education require that states develop and implement a comprehensive system of personnel development. <u>See</u> 34 C.F.R. §§ 300.380-300.382; <u>see</u> <u>also</u> 34 C.F.R. § 300.135 (requiring states to have in effect a comprehensive system of personnel development).

[20]   McKinney's claim that he withdrew his cross claim as to CSPD in MDCFL Case No. 487 because of the HRO's decision in MDCFL Case No. 424 is suspect given that he would have known about the September 18, 2001 decision by the HRO in Case No. 424 well in advance of both making and withdrawing his cross-claims in MDCFL Case No. 487.

The burden of demonstrating futility or inadequacy of exhaustion of administrative remedies before bringing civil action under the IDEA rests on party seeking to bypass the administrative procedures.  See Gean, 330 F.3d at 773 (citing Honig v. Doe, 484 U.S. 305, 327 (1988); 20 U.S.C. § 1415(i)(2)).

In MDCFL Case No. 424, the issue before the IHO was whether the substitute paraprofessionals at Andover Elementary School lacked proper training, thereby depriving McKinney of FAPE.  See September 18, 2001, Findings of Fact, Conclusions, and Decision of HRO in MDCFL Case No. 424 at p. 1 (attached to McKinney's supplemental memorandum).  The HRO reviewed McKinney's contention that the IHO had erred in her decision as it related to the training of the substitute paraprofessionals and also dealt with the issue of whether a school district is required to develop a CSPD under the IDEA.  Id. at p. 2.  The HRO in MDCFL Case No. 424 found that:

> 14.    20 U.S.C. § 1412(a)(14) requires a state to have in effect a comprehensive system of personnel development to ensure an adequate supply of qualified special education, regular education, and related services personnel.  IDEA does not require local school districts to have such a plan.  Accordingly, the School District was not required to develop a comprehensive system of personnel development as referred to in IDEA.

Id. at p. 5.

McKinney asserts that his cross-claim concerning staff development and CPSD were futile in Case No. 487 because the IHO had excluded the testimony of his expert witness, O'Donnell, who would have testified, among other topics, about staff training in developing IEPs.  Id.  This Court rejects this argument as the staff training and CSPD/cross-claims were withdrawn by McKinney on July 15, 2002, whereas the testimony of O'Donnell was not excluded until September 3, 2002, the start of the due

process hearing.  See Mace Aff., Ex. D (Transcript from Prehearing Conference) at p. 6; see also IHO Decision at p. 1.

Moreover, in MDCFL Case No. 424, the issue of whether the School District had a CSPD, was raised in the context of the training of substitute paraprofessionals at Andover Elementary School.  On the other hand, in MDCFL Case No. 487, the issue before the IHO was whether the May 3, 2002 proposed IEP was proper under the IDEA. As such, the relevancy of whether the School District had a CSPD could relate only to the issue of whether the IEP members were properly trained in the development of IEPs and whether that affected the IEP in this case.  However, just because McKinney lost in previous administrative proceeding regarding training on a separate issue, does not mean that he would have lost the issue here.  As such, this Court finds that McKinney has not met his burden to show that it would have been futile to submit the issue of IEP training and the CPSD to the administrative process in this case.[21]

Most importantly, this Court has already found that the HRO in MDCFL Case No. 424 was correct in his finding that that the IDEA does not require a school district to develop a CSPD.  See December 1, 2003 Order [Docket No. 56], aff'd by January 30, 2004, Order by Chief Judge James M. Rosenbaum [Docket No. 74].

Therefore, for all of these reasons, this Court grants the School District's motion

---

[21]   In fact, McKinney has not even alleged in his First Amended Complaint, as to MDCFL Case No. 487, that he was deprived FAPE because the School District did not properly train its staff in IEP development or because it did not have a CSPD in place. See First Amended Complaint, at pp. 6-8, ¶¶ 15-17.  As such, this issue is not even properly before the Court as it relates to MDCFL Case No. 487.  Compare, First Amended Complaint at p. 6 ¶ 11 (where McKinney alleged, as it pertains to MDCFL Case No. 424, that the School District did not properly train staff on the augmentative assistive device and that the HRO erred in not finding that a school district is not required to develop a CSPD).

for partial summary judgment as to the issue of CSPD and deems this claim waived.[22]

## RECOMMENDATION

For the reasons set forth above and based on all the files, records, and proceedings herein, IT IS RECOMMENDED that defendant's Motion for Judgment on the Administrative Record in Part [Docket No. 38] be **GRANTED** and that defendant's Motion for Partial Summary Judgment [Docket No. 38] be **GRANTED** in part and **DENIED** in part.

Dated:  August 16, 2005

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge


Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **August 29, 2005** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the School District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **August 29, 2005**.

---

[22]   This Court will not directly address the self-study report addressed in McKinney's Supplemental Memorandum, see Pl.'s Supp. Mem. at pp. 6-7, as the Court has denied McKinney's request to supplement the record with the report pursuant to its ruling on his Motion to Hear Additional Evidence.  This Court does note, however, that while general statements in the report pertaining to parents not knowing their rights, that laws and due process are not always followed, and that teachers have concerns about due process, may be relevant to systematic violations, they have no bearing on whether the specific May 3, 2002 proposed IEP is valid under the IDEA.